Terri Lee HALDERMAN, et al., Plaintiffs,

v.

PENNHURST STATE SCHOOL AND HOSPITAL, et al., Defendants,

United States of America, Plaintiff-Intervenor,

Pennsylvania Association for Retarded Citizens, et al., Plaintiffs-Intervenors.

Civ. A. No. 74–1345.

United States District Court, E.D. Pennsylvania.

Dec. 22, 1982.

David Ferleger, Herbert B. Newberg, Philadelphia, Pa., for Terri Lee Halderman.

Thomas M. Kittredge, Philadelphia, Pa., for Bucks, Chester and Delaware Counties.

---

Robert B. Hoffman, Deputy Atty. Gen., Harrisburg, Pa., for the Com. of Pennsylvania.

Thomas Gilhool, Philadelphia, Pa., for Pennsylvania Ass'n for Retarded Citizens.

Herbert B. Newberg, Philadelphia, Pa., for David Ferleger.

Pamela P. Cohen, Philadelphia, Pa., for Pennhurst Parents Ass'n.

Terisa Chaw, Civil Rights Div., Dept. of Justice, Washington, D.C., R. Stephen Barrett, Asst. County Sol., Norristown, Pa., for Montgomery County.

Marc H. Myers, Asst. City Sol., Philadelphia, Pa., for Philadelphia County.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

On November 26, 1982, the Hearing Master issued a report and Order concerning T.M. and A.B., two retarded persons who have been transferred from Pennhurst to a community living facility approved for funding by the federal government as a community facility for the mentally retarded (ICF/MR) in Montgomery County. Exceptions have been filed contesting various portions of the Hearing Master's report. Pursuant to this Court's Order of April 24, 1980, the Court will enter an Order setting a date for a hearing on these exceptions. However, the Hearing Master's Report and motions recently filed by the plaintiffs in this case set forth that the community facility in which T.M. and A.B. currently reside may be closed due to a dispute between the Commonwealth defendants, Montgomery County, and the private care providers under contract with the County to provide the minimally adequate habilitation required for T.M. and A.B. pursuant to their individual habilitation plans heretofore approved by the Commonwealth and the County.

In order to prevent irreparable harm to T.M. and A.B., which could occur if their community living facilities were suddenly terminated and to make certain that T.M. and A.B. are not returned to Pennhurst in violation of this Court's Orders, the Court will enter an Order directing the Commonwealth defendants and Montgomery County to take any and all steps necessary to ensure that T.M. and A.B. receive minimally adequate habilitation as described in their individual habilitation plans in their present residence until such time as this Court has had the opportunity to hold a hearing and make a determination concerning the exceptions to the Hearing Master's Report. The Court intends that the individual habilitation plans for T.M. and A.B. be fully complied with and that their current residence be maintained while this Court gives the matter expedited consideration, the hearing regarding the aforesaid exceptions to the Master's Report having been set for January, 1983.

Specifically, T.M. and A.B. reside in an intermediate care facility for the mentally retarded (ICF/MR) located in Pennsburg, Montgomery County, Pennsylvania. An ICF/MR is a facility operated pursuant to the medical assistance program of Title XIX of the Social Security Act (42 U.S.C. § 1396, *et seq.*). A small ICF/MR is virtually identical to the community living arrangement (CLA) residential treatment programs operated by the Commonwealth and County defendants in this case, which currently house many former residents of Pennhurst who have now begun to enjoy the greater benefits of education, training, habilitation, and life in the community rather than the segregation from society and regression in life skills which they suffered while at Pennhurst (*see* 446 F.Supp. 1295, 1300–1305). On the basis of funding, ICF/MRs appear to enjoy a financial advantage to the Commonwealth in that small residential facilities operated under the ICF/MR program are 55% federally funded while non-ICF/MR community facilities are 100% state funded. However, despite this relative economic benefit to the Commonwealth of ICF/MRs, the Commonwealth defendants have made little use of the ICF/MR program (*see* 545 F.Supp. 410 (E.D.Pa.1982); 542 F.Supp. 619 (E.D.Pa. 1982); 526 F.Supp. 428 (E.D.1981).

The ICF/MR in which T.M. and A.B. reside is operated by Shiloh, Inc. Pursuant to their Individual Habilitation Plans (IHP), T.M. and A.B. are also to receive day program training from Prospectus, Inc. The IHPs for T.M. and A.B. were provided by a planning assessment team aided by mental retardation professionals.

An individual habilitation plan (IHP) is designed for each retarded resident of Pennhurst for whom a community living arrangement is being considered. The development of such personalized treatment and habilitation plans was mandated by this Court's Order of March 17, 1978 (446 F.Supp. at 1326) as modified by the Order of April 24, 1980. Paragraph 2 of the March 17 Order provides:

> Commonwealth and county defendants, as aforesaid, are permanently enjoined to develop and to provide a written individualized program plan, formulated in accordance with professional standards (Opinion, page 25; Roos N.T. 1–115, 1–116, Hare N.T. 8–168) to each member of plaintiff class, to provide to each an individualized habilitation program, to provide annual periodic review thereof and the opportunity to each member of plaintiff class and to his or her next friend to be heard thereon.

446 F.Supp. at 1326.

The injunctive relief ordered by this Court (Order and Memorandum of March 17, 1978; Order of March 5, 1979) as modified in light of the Third Circuit's first en banc decision in this matter (612 F.2d 84) (Order and Memorandum of April 24, 1980) requires that individual habilitation plans be developed for each resident of Pennhurst and other retarded members of the plaintiff class. These proposals are developed by a Planning and Assessment Team which includes but is not limited to the Pennhurst resident, his or her case manager, an employee of a county defendant, and the parent, guardian, or certified advocate of the Pennhurst resident. Frequently joining this team are Pennhurst staff members who have worked with the client, the day program and residential program providers for the retarded client as well as medical and habilitation specialists. At one time, the Special Master monitored the formulation of IHPs to make certain that each plan was formulated in accordance with professional standards so that each Pennhurst resident for whom an IHP was designed would have a reasonable opportunity to acquire and maintain such life skills as their potential capacities permit. On January 4, 1982, this monitoring function was transferred to the Commonwealth defendants who had, previous to that date, permitted their obligation in this respect to be performed by the Special Master.

Thus, pursuant to this Court's Orders, a group of mental retardation professionals designs an IHP for the Pennhurst resident. If the team concludes that the retarded citizen would receive greater habilitative benefit in the community, a particular community facility is selected or established and the retarded person moves to the community facility for a preplacement visit during which his or her reaction to the setting and program can be assessed. Preplacement visits are required before the Commonwealth defendants approve an IHP.

As heretofore noted, the IHP is a plan specifically tailored to the needs of the retarded person. One purpose of a preplacement visit or visits is to afford an opportunity for a meaningful determination as to whether the community facilities being provided pursuant to the IHP are in accordance with the professionally set specifications of the plan. The Court again emphasizes that a preplacement visit or visits should not be made until the community living arrangements are completed and a determination has been made that the community living arrangement is safe, clean, and adequate, and that the services required to provide a more beneficial program of habilitation are available. As the Circuit Court has cautioned, both this Court and the Hearing Master, as well as the Commonwealth defendants who now approve each IHP, must have assurances before ordering transfers to community living ar-

rangements that the sanitary, staffing, and program deficiencies found at Pennhurst are not duplicated on a smaller scale in community living arrangements (*see* 612 F.2d at 116).

In the cases of T.M. and A.B., as with all Pennhurst residents for whom an IHP has been prepared, the Commonwealth and County defendants have been intimately involved in each step of the planning and implementation process. It was not the Special Master, the Hearing Master, or the Court that drafted the IHPs of T.M. and A.B. Those plans were designed by their case manager, an employee of Montgomery County, and Pennhurst staff members, employees of the Commonwealth. After the IHP was drafted, it was approved by these state and county professionals. At that time, the parents of T.M. and A.B. were the only members of the Planning Assessment Team who declined to approve the plan. The IHP was next presented to the Special Management Unit of the Commonwealth DPW Pennhurst Implementation Team. The Special Management Unit approved the IHP, which provided that T.M. and A.B. should receive certain services in the community including a certain staffing ratio in their community facility.

Thus, pursuant to Court Orders, IHPs were designed for T.M. and A.B. These IHPs were approved by Montgomery County and the Commonwealth defendants. The IHPs, formulated in accordance with acceptable professional standards, called for the transfer of T.M. and A.B. from Pennhurst to community facilities in Montgomery County. Specifically, the IHPs anticipated that T.M. and A.B. would begin their new lives outside Pennhurst in an ICF/MR operated by Shiloh and would receive day program habilitation through Prospectus. The parents of these two retarded citizens each disputed the IHP conclusion that their children would receive greater habilitative benefit in the community rather than in Pennhurst and requested a hearing on this matter before the Hearing Master.

The Hearing Master was appointed by this Court in its Order of April 24, 1980 to comply with the Third Circuit's remand of this case which instructed this Court to provide a mechanism whereby individual determinations would be made for each class member concerning the type of habilitation he or she would receive. Though the Third Circuit affirmed this Court's finding that "for the retarded class members as a whole, Pennhurst cannot be an appropriate setting in which to provide habilitation," (*see* 612 F.2d at 114), the Circuit Court was concerned that some severely retarded individuals, especially those older individuals who had known no life but that of Pennhurst, might not benefit from community living and that a hearing should be provided to those members of the class who did not wish to leave Pennhurst. Thus, although the IHPs contain the professional determinations that a living arrangement outside of Pennhurst would benefit the individual class member, that class member nevertheless is provided a hearing on the matter before the Hearing Master. At these hearings, the Master, an attorney with vast experience in the mental retardation field, receives evidence and determines, based on the testimony of mental retardation professionals, whether the residence proposed in the IHP will provide greater habilitative benefit to the retarded citizen than would continued confinement at Pennhurst.

In his Report of November 26, 1982, the Hearing Master concluded that the community residence proposed in the IHP of T.M. and A.B. would provide them greater benefit than would remaining at Pennhurst. By this juncture, the parents of T.M. and A.B. had come to believe that community residence was in the best interests of their children. However, it became apparent during the course of the hearing that a funding dispute between the Commonwealth defendants, Montgomery County, Shiloh, Inc., and Prospectus, Inc. might result in Shiloh and Prospectus terminating all services to T.M. and A.B. which would, in effect, require some emergency action by this Court. Apparently, to avoid such an emergency, the Hearing Master ordered that the services described in the IHPs should be provided to T.M. and A.B., that

T.M. and A.B. continue to reside in their current ICF/MR in Pennsburg, and that the Commonwealth defendants provide Shiloh with a certain reimbursement rate to ensure the provision of these IHP-mandated services. As heretofore noted, exceptions have been filed to the Master's report. This Court will, in its accompanying Order, set a hearing for the purpose of considering these exceptions. The hearing date of January 1983 has been chosen so that this Court may receive evidence and consider the exceptions to the report as soon as practicable.

The Court takes no position regarding the ICF/MR reimbursement rate-setting process and the particulars of the dispute between the Commonwealth defendants, Montgomery County, Shiloh, and Prospectus. As heretofore stated, it is currently this Court's intention to prevent irreparable harm to T.M. and A.B. during the pendency of the expedited consideration of exceptions to the Master's Report and Order. An appropriate Order will be accordingly entered.

### ORDER

AND NOW, this 22 day of December, 1982, upon consideration of the Report of the Hearing Master filed November 26, 1982 concerning the community placements of T.M. and A.B., Nos. 82–P–21 and 82–P–22, exceptions to the aforesaid Report having been filed by defendant Montgomery County and the Commonwealth defendants and private care providers Shiloh, Inc. and Prospectus, Inc. for the reasons set forth in this Court's Memorandum of December 22, 1982,

IT IS HEREBY ORDERED:

1. A hearing shall be held in connection with the aforesaid exceptions on January 13, 1982 at 9:30 a.m. in Courtroom 10–B of this United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

2. The Commonwealth defendants and the Montgomery County defendants are hereby enjoined and ordered to take any and all steps necessary to ensure that T.M. and A.B. receive minimally adequate habilitation as described in their individual habilitation plans in their present residence until

such time as this Court has, after hearing, issued its determination concerning the aforesaid exceptions to the Hearing Master's Report of November 26, 1982.